IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHNATHAN FRANKLIN,

                Plaintiff,                OPINION AND ORDER

v.

                                                        17-cv-562-wmc

JOAN HANNULA and
JAMIE BARKER,

                Defendants.

*Pro se* plaintiff Johnathan Franklin, a prisoner at Stanley Correctional Institution ("Stanley"), had been granted leave to proceed in this lawsuit on claims that Dr. Joan Hannula and Jamie Barker violated his Eighth Amendment rights and Wisconsin law in failing to provide him adequate footwear for his flat feet and treat his skin condition between 2012 and 2017. More specifically, Franklin wanted to be able to wear certain types of cushioned Nike boots permanently, but was instead required to wear custom orthotics and supports provided by Stanley, which he claimed caused a painful skin condition. On July 25, 2019, the court granted defendants' motion for summary judgment and entered judgment in their favor. (Dkt. #60.) Franklin then filed a timely motion to alter or amend that judgment pursuant to Federal Rule of Civil Procedure 59(e) (dkt. #62), and even more recently filed two more motions, asking for court intervention (dkt. #66) and for the court to transfer his negligence claim to a Wisconsin state court (dkt. #67). However, since Franklin has not identified a manifest error of law or fact or newly discovered evidence meriting setting aside the judgment, and Franklin's recent filings seek relief he cannot obtain in this lawsuit, the court must deny both motions.

I.  **Rule 59(e) Motion**

To succeed on his motion under Rule 59(e), Franklin must establish that: (1) the court committed a manifest error of law or fact, or (2) newly discovered evidence precludes entry of judgment. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). A "manifest error" occurs when the district court engages in a blatant material, factual mistake or a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (internal quotations and citations omitted). In contrast, Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Rule 59(e) relief is only available if the movant clearly meets one of the two foregoing criteria for relief. *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006) (citing *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n.3 (7th Cir. 2001)). Here, Franklin claims that the court ignored or did not properly weigh certain evidence related to his need for special shoes to address his flat feet, and he offers new evidence in support of his claims.

   A. **Old Evidence**

Starting with old evidence Franklin believes the court *misconstrued*, Franklin points to several pieces of evidence he submitted in opposition to defendants' motion for summary judgment. *First*, he argues the court overlooked evidence that an Illinois podiatrist had previously prescribed him Nike Air Max All Conditions Gear ("ACG") boots. However, the court already considered this very same evidence, finding that it did not

establish that there was a *prescription* for Nike ACG boots from that doctor, just that the podiatrist *allowed* him to wear those shoes. (7/25/2019 Order (dkt. #60) 18-19.) Thus, as this court previously concluded:

> Without a clear diagnosis as to the approach taken by the Illinois doctor, Hannula referred Franklin to a specialist for orthotics and braces to be worn with his state-issued boots in an attempt to address his footwear needs within the confines of what was approved by the DOC. Not only is there no evidence of record suggesting that Hannula had reason to know that this approach to treating was blatantly inappropriate in 2012, Franklin's representation that another podiatrist, Dr. Van Beek, had prescribed him custom orthotics while he was at GBCI, buttresses Dr. Hannula's chosen course of action.

(*Id.* at 19.) Franklin has not explained how the court misconstrued this evidence, and the court sees no error in concluding that Dr. Hannula's failure to deem Franklin's Nike boots a medical necessity in 2012 to be deliberate indifference or negligence.

*Second*, Franklin asserts that his ACG boots were "maliciously confiscated" and were only returned after the warden ordered their return. Franklin further asserts that while he was amenable to wearing orthopedic shoes, he refused the prescribed shoes in January 2017, because they were out of season, caused bruises and did not fit with his braces. Again, the court previously addressed the confiscation of his ACG boots, finding that the *evidence* of record did not support a credible finding that defendants Hannula or Barker were involved in that confiscation. (*Id.* at 12.). As for Franklin's January 2017 refusal of the so-called "Drew" shoes prescribed, the *only* evidence of record submitted at summary judgment was that Franklin rejected them because it was "too little too late," *and* Franklin still had the ability to ask for them back. (*Id.* at 25.) Moreover, Franklin has cited to nothing in the record suggesting he told Barker or Hannula that those shoes did not fit and

3

were causing him pain.

*Third*, Franklin argues the court did not properly consider the import of Dr. Elliot's treatment and recommendations. Here, too, the court considered both at summary judgment. Although Franklin asserted that Dr. Elliot thought high-top boots were the best support for him -- because Dr. Elliot commented, "I didn't think they had a problem with the ACG Nike boots" -- this was because Franklin had worn them to appointments. More importantly, Franklin does not grapple with the more material fact that Dr. Elliot never concluded that high-top boots were medically necessary, much less *prescribed* them to Franklin. Accordingly, the court correctly found that Dr. Elliot's recommendations did *not* call Dr. Hannula's treatment decisions into question, and certainly did not establish that treatment to support a finding of deliberate indifference or medical malpractice. (*See id.* at 21.)

*Fourth* and finally, Franklin points to Dr. Hannula's failure to issue high-top, state-issued boots. However, the court addressed this failure directly as well at summary judgment, concluding that while that option was available to Dr. Hannula, no reasonable jury could find that his exercise of professional judgment in not ordering those shoes for Franklin amounted to malpractice, much less deliberate indifference. (*Id.* at 22.) In sum, Franklin has not identified a manifest error in the court's factual findings on the summary judgment record, nor any conclusions warranting reconsideration.

### B. New Evidence

Second, Franklin also asks the court to consider six new pieces of evidence: (1) a

4

podiatrist he saw as a child told him to wear supreme cushion shoes; (2) Dr. Hannula prescribed him orthopedic shoes in June and July of 2014; (3) defendants did not want to allow Franklin to possess two pairs of personal shoes due to inmate jealousy; (4) Barker committed perjury in explaining the confiscation of his Drew shoes; (5) in a November 15, 2018, memorandum, someone named Christopher McHenry, reported to Barker that Franklin's foot condition was unchanged; and (6) on August 11, 2019, a Stanley nurse named Deprey Leonard told him he needed orthopedic shoes and arch supports, and he can provide expert testimony in support of his claims.

      Despite Franklin acknowledging that all of this evidence is new, he fails to explain *why* it was not presented earlier. Moreover, as to the evidence from 2018 and 2019 in particular, Franklin fails to explain how these pieces of information call into question the totality of Franklin's care by defendants Barker and Hannula between 2012 and 2017. While Franklin also repeats his plea for an attorney, the court expressly considered Franklin's abilities to act as his own counsel on multiple occasions, and each time concluded that he was very familiar with the relevant legal standard *and* had shown an ability to gather evidence in support of his claims. Further, the court *remains* unconvinced that Franklin needed an attorney to litigate his claims in this case. Finally, Franklin's failure to explain how this additional information constitutes "new evidence" sufficient to justify setting aside the judgment in defendants' favor -- much less how this evidence proves his claims against Barker or Hannula -- leaves the court with no basis to disturb the judgment against him. Accordingly, Franklin's Rule 59(e) motion is denied.

**II.     Letter Motion**

Finally, Franklin recently submitted a letter to the court newly complaining that he is unable to access skin care products to address his skin conditions, and requesting the court intervene to ensure that he is seen by a medical specialist. Although Franklin's claim in this lawsuit related to how Hannula and Bentley handled his skin care issues in 2016, his claims were *not* ongoing, and thus, not part of this lawsuit. If Franklin truly believes he has a new federal claim against Hannula, Bentley or any other state official responsible for his medical care, he will need to exhaust any administrative remedies within his current institution and then pursue a separate lawsuit related to that claim. Franklin cannot end run that process by effectively asking the court to construe this letter as a motion for injunctive relief on an entirely different claim than is now before it.

ORDER

IT IS ORDERED that plaintiff Johnathan Franklin's motions to alter or amend pursuant to Federal Rule of Civil Procedure 59(e) (dkt. ##62, 67) and for court assistance (dkt. #66) are DENIED.

Entered this 20th day of April, 2020.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge